UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TREE DEFENDER, LLC

        **Plaintiff,**           Case No.: 8:24-cv-02520-VMC-NHA

v.

MIKE HURST CITRUS SERVICE
INCORPORATED,

        **Defendant.**

_____/

### DEFENDANT'S CLAIM CONSTRUCTION OPPOSITION BRIEF

Pursuant to the Court's Patent Scheduling Order [Dkt. #22], Defendant, Mike Hurst Citrus Service Incorporated ("Hurst Citrus") submits its Claim Construction Opposition Brief in response to Plaintiff's Opening Claim Construction Brief [Dkt. #46] ("Plaintiff's Opening Brief"):

## I.    INTRODUCTION

It is important to understand the general nature of the claimed invention before embarking on claim construction. The invention claimed in Plaintiffs' two patents at issue, U.S. Patent Nos. 11,730,062 (the "'062 Patent") and 12,058,965 (the "'965 Patent and with the "062 Patent, the "Patents"), is a mesh bag used to cover "a plant" – a product the industry refers to as a "tree bag". One may fairly ask: "How could anyone get a patent on a mesh bag you put over a plant?" Because a patented invention is defined by the patent claims, the language of those claims must hold the answer.

Before going further, the Court is invited to read claim 1 of each of the Patents (the only claims charted in the Complaint) and try to imagine or draw a picture of what is being described in those claims. Plaintiff found a truly perplexing way to describe a mesh bag used to cover a plant. Its scaffolding of meaningless language and convoluted claimed structures disguises two critical truths – the Patents' claimed invention is indistinguishable from the prior art and the asserted claims are indefinite.[1]

The sole remaining disputed claim term -- "mesh" -- seems easy to understand. Yet, it is the only claim term that Plaintiff seeks to define. Plaintiff argues "mesh" must be defined as having sufficient fineness to prevent "intrusion by insects detrimental to the plant". The reason is plain – Plaintiff seeks to avoid invalidating prior art references.

This Court should reject Plaintiff's proposed construction. Plaintiff's request that the Court import a limitation from an "example" in the specification of mesh being small enough to prevent intrusion by insects detrimental to the plant" is not supported by the intrinsic evidence or the prosecution history and violates a host of claim construction principles.

Ironically, Plaintiff's proposed construction would also render the claim indefinite. Insects "detrimental to plant[s]" range in size from barely a speck (like aphids) to those that are several inches long (such as grasshoppers)[2]. Thus, the fineness

---

[1] Hurst Citrus will address the Patents' invalidity under 35 U.S.C. §§ 102, 103, and 112 on summary judgment.

[2] Both of these insects are discussed in the specification. *See* '062 Patent, Col. 3:55-57; '965 Patent Col. 4:29-31.

of a "mesh material having a mesh size that prevents intrusion by insects detrimental to the plant", included in Plaintiff's proposed construction, is indefinite. Such a mesh size depends on the particular insects one seeks to prevent from attacking a particular plant although nothing in Plaintiff's asserted claims limits the invention to a particular insect or type of plant.

The construction of "mesh" proposed by Hurst Citrus is clear, understandable, and supported by the Patents' specification. Hurst Citrus' proposed construction of "mesh" is "a net-like material which provides water permeability and light transmissivity." In short, "mesh" should be construed as what is commonly understood to be mesh.

In the interest of judicial efficiency, Hurst Citrus now agrees with Plaintiff that the remaining nine (9) disputed claim terms[3] should all be construed to have their plain and ordinary meaning. Although Hurst Citrus believes that those terms are indefinite, construction of those terms is not needed to establish that they render the asserted claims invalid for indefiniteness. The incomprehensibility of those claims is self-evident.

## II.    THE LAW GOVERNING CLAIM CONSTRUCTION

Claim construction begins with the words of the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). "[T]he claims themselves provide substantial

---

[3] Those terms are: "major mesh surface", "seam/seams", "first mesh section", "sealed", "second mesh section", "integral [with]", "opposite", "first perimeter", and "second perimeter".

guidance as to the meaning of particular claim terms," and "the context in which a term is used in the asserted claim can be highly instructive." *Id.* at 1314.

Overall, a claim term is given "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."[4] *Id.* at 1313. "[T]he 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321. Thus, while the claim language is the focus, the larger primary source of evidence for claim construction is the entire body of intrinsic evidence, *i.e.*, "the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Id.* at 1312–1317; *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Specialized knowledge of an inventive field is not always required for claims construction. As noted by the Federal Circuit:

> In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.

*Phillips*, 415 F.3d at 1314. "In such circumstances, general purpose dictionaries may be helpful." *Id.* That is the case here. "Mesh" is not a complex or scientific term.

---

[4] Neither party has disclosed or cites to the opinion of "a person of ordinary skill in the art", which is hardly surprising given the simplicity of the claimed invention. Despite this fact, Plaintiff's Opening Brief asserts what "[one] of skill in the art in this field" would understand without any evidentiary support. *See* Plaintiffs' Opening Brief at p. 7. The Court should disregard Plaintiff's unsupported assertion.

The Federal Circuit holds that limitations from the specification should *not* be read into the claims. *See Phillips*, 415 F. 3d at 1323. The Federal Circuit regards importing limitations from the specification into the claims as "one of the cardinal sins of patent law." *Id.* at 1320. Moreover, exemplary embodiments within the specification should *not* be read into the claims. Rather, limitations of embodiments of an invention described in a specification are *not* limitations to the invention as a whole. *See, e.g.*, *Commonwealth Sci. & Indus. Res. Organization v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1380 (Fed. Cir. 2008). The Federal Circuit:

> expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.

*Phillips*, 415 F. 3d at 1323, citing *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1366 (Fed. Cir. 2004).  This is a clear and binding precedential prohibition.

When a party argues that a claim term should be construed to include a limitation mentioned in the specification, the Court must examine how that limitation is discussed. The Federal Circuit:

> [looks to whether the specification refers to a limitation <u>only as a part of less than all possible embodiments</u> *or* whether the specification read as a whole suggests that the very character of <u>the invention requires the limitation be a part of every embodiment</u>. (Emphasis added).

*Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1370 (Fed. Cir. 2003). "The Court must be careful, however, to avoid reading limitations from the specification into the claim." *Ice House Am., LLC v. Innovative Packaging Techs., Inc.,* No. 3:05-cv-1294-J-33TEM, 2008 WL 2856674, at *3 (M.D. Fla. July 22, 2008). "The claim is what limits the scope of

the patent, not the specification." *Id.* As noted by the Supreme Court more than a century ago:

> if we once begin to include elements not mentioned in the claim, in order to limit such claim, in order to limit such claim, and avoid a defense of anticipation, we should never know where to stop.

*McCarty v. Lehigh Valley R.R. Co.*, 160 U.S. 110, 116 (1895).

Courts may consider the prosecution history of a patent, but only for a limited purpose. "The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'" *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005), quoting *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed Cir. 1988).

Extrinsic evidence may also aid the Court's construction of a disputed claim term. The Federal Circuit "observed that dictionaries and treatises can be useful in claim construction." *Phillips*, 415 F.3d at 1318.

A claim is indefinite when "its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

## III.    THE SOLE REMAINING DISPUTED CLAIM TERM – "MESH"

### A. Hurst Citrus' Proposed Construction

Hurst Citrus' proposed construction of "mesh" is easily understood, consistent with the intrinsic evidence, and follows claim construction principles. "Mesh" is "a

net-like material which provides water permeability and light transmissivity." The term "net-like material" in the proposed construction is from the dictionary definition:

"material like a net made from wire, thread, or plastic"[5]
"material like a net with spaces in it, made from wire, plastic, or thread"[6]

The limitation of providing "water permeability and light transmissivity" is also proposed by Plaintiff and is, therefore, agreed upon by the parties. Unlike Plaintiff's definition, the construction proposed by Hurst Citrus gives meaning to "mesh" without importing an optional exemplary limitation from the specification or rendering the term indefinite.

**B. Plaintiff's Proposed Construction**

Plaintiff asks this Court to violate fundamental claim construction principles. Plaintiff's proposed construction of "mesh" improperly imports an optional exemplary limitation from the specification -- a mesh size sufficient to block detrimental insects -- into claim language. Plaintiff's proposed construction also inserts into the asserted claims a unclaimed functional requirement from the specification – "prevent[ing] intrusion by insects detrimental to the plant". The Court should reject Plaintiff's invitation to error.

1. Plaintiff's Improper Importing of an Optional Size Limitation.

The asserted claims simply recite a "mesh" material without any qualification as to the size or function of the "mesh". Yet, Plaintiff asks the Court to limit "mesh"

---

[5] https://www.collinsdictionary.com/dictionary/english/mesh
[6] https://dictionary.cambridge.org/dictionary/english/mesh

to a "size that prevents intrusion by insects detrimental to the plant". Plaintiff draws this limitation from an ***expressly optional embodiment*** in the specification. This is a classic attempt to improperly import a limitation from the written description into the claims. *See Alloc,* 342 F.3d at 1370.

The specification's only reference to mesh size appears in the section titled "Detailed Description". This portion of the specification is **not limiting** -- it merely provides examples. That section expressly states in relevant part that it:

> **describes example aspects and embodiments**, but **not all possible aspects and embodiments** of the plant cover and related methods. . . . The plant cover may be embodied in many different forms and **should *not* be construed as limited to only the embodiments described here**. (Emphasis added).

'062 Patent, Col. 2, lines 50-52; '965 Patent, 56-58 Col. 4:23-31. The Court should hold Plaintiff to this express representation.

In discussing mesh size, the specification expressly uses the key phrases "**may be**" and "**for example**"– phrases that Plaintiff's Opening Brief never discusses:

> The panels 204, 206 **may be** made at least partially or completely of a mesh material, which provides water permeability and light transmissivity, but prevents intrusion by small insects such as psyllids. The mesh size **may be**, **for example**, 50 mesh or 50 by 25 threads per square inch. Such a mesh size will be sufficient to prevent intrusion by psyllids, aphids, white flies, mealy bugs, leaf miners, thrips, grasshoppers, ants, and orange dogs. (Emphasis added).

'092 Patent, Col. 3, lines 50-57; '965 Patent, Col. 4:24-31. Obviously, if the mesh "may be" a certain size, it also "may **not** be" that size. This is precisely the type of exemplary limitation that cannot be imported into a claim. *See Alloc,* 342 F.3d at 1370. Thus, the

mesh size in the specification cannot be read into the claims because it is **<u>expressly optional and not required</u>**.

Nor does the prosecution history help Plaintiff. The prosecution history confirms that Plaintiff did **<u>not</u>** claim any particular mesh size or insect-blocking feature. In fact, the Patent Examiner explicitly refused to accept such an unclaimed feature as a basis for patentability.[7]

> **Brief Description of the main topic(s) of discussion:** Parties discussed the combination of Phair and Lovett Jr. being proper. The examiner explained that the trunk cover of Lovett Jr. could be used in conjunction with the tree cover of Phair. **Applicant discussed the mesh material used to form the instant invention being of a particular quality. The examiner explained that the specifics of the mesh material was [sic.] not claimed.** Parties also discussed US 6698135 being used as a prior art since it taught a plurality of panels used to form a tree cover. (Emphasis added).

Nothing in the prosecution history reveals an express disclaimer that supports Plaintiff's proposed limitation of "mesh". Therefore, the prosecution history cannot be used to support Plaintiff's proposed construction. *See Chimie*, 402 F.3d at 1384.

Plaintiff cannot now, via claim construction, obtain a claim limitation it failed to secure in before the United States Patent and Trademark Office (the "USPTO"). Plaintiff's proposed construction to add a mesh size appears to be a litigation-driven attempt to avoid invalidation in light of prior art tree covers and it should be rejected.

---

[7] The January 22, 2020, Examiner interview summary of the January 16, 2020, telephonic interview, contained in the prosecution history of parent patent U.S. Ser. No. 15/359,111 is attached hereto as Exhibit A.

### 2.  Plaintiff's Improper Addition of a Functional Limitation

Nothing in the asserted claims mentions any functional result of "prevent[ing] intrusion by insects detrimental to the plant". If Plaintiff intended to claim an "insect-proof mesh", it could have easily done so by including those words in the claims. It did not. In light of Plaintiff's omission, the claims must be given their natural breadth.

It is a bedrock principle that courts may not redraft or add new limitations to claims under the guise of construction. As the Supreme Court cautioned long ago, a patentee is required to "define precisely what his invention is," and it is "unjust to the public" to construe a claim beyond "the plain import of its terms." *White v. Dunbar*, 119 U.S. 47, 52 (1886). Plaintiff's proposal violates this rule by injecting a new functional requirement found nowhere in the text of the asserted claims.

The specification's description of insect-blocking mesh is **not** a claim limitation. As noted above, Plaintiff's only intrinsic support for its proposed construction of an insect blocking "mesh" comes from the specification, which describes a merely exemplary embodiment. The specification notes that the "mesh size **may be, for example**, 50 mesh or 50 by 25 threads per square inch" which is "sufficient to prevent intrusion" by various insects. *See* '092 Patent, Col. 3:53-57; '965 Patent, Col. 4:27-31. (emphasis added). The specification merely teaches one preferred way to practice the claimed invention (using a fine mesh for insect protection). Nothing in the specification or claims requires "mesh" to possess that specific capability.

10

Nor do the Patents redefine "mesh" to mean "insect-proof mesh or limit "mesh" only to insect-blocking embodiments. On the contrary, the Patents tout other benefits of an example of the "mesh" plant cover – such as protecting against frost, hail, and wind damage. *See* '063 Patent Col. 3:57-59; '965 Patent, Col. 4:31-33. This indicates that the function of "mesh" is not to achieve insect exclusion any more than it is to prevent damage from hail. *See e.g. Sunrace Roots Enter. Co. v. SCRAM Corp.,* 336 F.3d 1298, 1304-1305 (Fed. Cir. 2003). Tellingly, Plaintiff does **not** ask this Court to import a "prevents hail damage" limitation into the definition of "mesh".

Absent a clear indication that the patentee intended to limit "mesh" to only one specific type or function, it would be improper to import such a limitation. Indeed, reading unclaimed features from the specification into a claim is considered one of the cardinal sins of patent law. *See Phillips*, 415 F.3d at 1323 (court must distinguish "using the specification to interpret the meaning of a claim" from "importing limitations from the specification into the claim"). The *Phillips* Court noted:

> We have held that "the fact that a patent asserts that an invention achieves several objectives does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objectives." *Liebel-Flarsheim*, 358 F.3d at 908.

*Id.* at 1327; *see also Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1364-1365 (Fed. Cir. 2003)("a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment.").

Plaintiff's proposed construction crosses the line by asking the Court to confine "mesh" to a single example's function, contrary to the claims' broader scope.

3. <u>The Prosecution History Contradicts Plaintiff's Construction</u>.

Plaintiff relies upon the prosecution history without providing any evidence of a clear disclaimer that would support its construction of "mesh" or refute that of Hurst Citrus. Such reliance is improper. *See Chimie*, 402 F.3d at 1384. Yet, even if considered, the prosecution history does not support Plaintiff's proposed construction.

The prosecution history shows Plaintiff never claimed an insect-blocking limitation. Plaintiff's Opening Brief mistakenly relies on its Reply Brief in the appeal of its U.S. Patent Application No. 15/359,111 (the "'111 Application") and subsequent reversal by the Patent Trial and Appeal Board (the "Board"). Although Plaintiff's Opening Brief reads as though the Board adopted a definition of "mesh" requiring insect-blocking size, that is **not** what happened. In its Reply, the Plaintiff quoted the specification's example of a 50-mesh screen that "prevents intrusion by small insects," but the Board did **not** base its holding on that feature. Rather, the Board reversed the Examiner because the hood materials cited as prior art were not "of open texture" and did **not permit water or light to pass**, making them unlike a "mesh" as used in Plaintiff's '111 Application. *See* June 2, 2021, Board Decision, pp. 5–6.[8]

---

[8] The Board Decision is attached to Plaintiff's Opening Brief as Exhibit 4 [Dkt. 46-4].

Nowhere did the Board mention that preventing insect intrusion was considered in its decision, say nothing of requiring that "mesh" be sized to exclude any insect.

Mere argument by Plaintiff's attorney in a Reply Brief to the Board does not effect a clear disavowal. The Board's actual rationale stated in its Decision confirms that "mesh" was understood broadly as an open-textured material that is water and light permeable. The Patents' asserted claims as issued reflect the Board's understanding: they recite "mesh" with no insect-blocking requirement.

The patent examiner's interview summary explicitly notes that it was explained to Plaintiff (then the applicant) "that the specifics of the mesh material was not claimed." *See* Exhibit A. Thus, if Plaintiff wanted the claims to require a certain type of mesh, it needed to specify such a limitation in the claims. Plaintiff chose not to amend the claims to add any "mesh size" limitation and eventually obtained the patent with "mesh" broadly defined. This prosecution history prevents Plaintiff from now reversing course and reading in the very limitation it declined to claim. *See Phillips*, 415 F.3d at 1317 (prosecution history provides evidence of how the inventor understood the invention and whether the inventor limited the invention during prosecution).

By omitting any mesh-size requirement in the finally issued claims, Plaintiff forfeited any right to insert such a limitation via claim construction. It would be fundamentally unfair – and contrary to patent law – to allow Plaintiff to obtain through litigation claims of a scope that were never examined or claimed before the USPTO. Plaintiff applied for broad claims without a mesh size or functional limitation. It

cannot now narrow its claims by adding such a limitation to avoid invalidity. Rather, Plaintiff must live with the consequences of its choice. Plaintiff's bid to require an "insect-proof" mesh has no support in the prosecution history and must be rejected.

4. Plaintiff's Construction Adds an Unexamined Claim Limitation.

Claim construction should never be used to alter the scope of a claim beyond what was examined and granted. Yet, Plaintiff's construction, if adopted, would do just that. Defining "mesh" to include a new functional requirement (blocking certain insects) was never claimed during prosecution. Doing so now is not a mere clarification of existing language -- Plaintiffs attempts to inject a whole new criterion into the claims. Such a construction would include "unexamined" subject matter without addressing key questions that would arise during prosecution. For instance, what mesh size qualifies as sufficient to keep out insects detrimental to the plant? The asserted claims as issued are silent as to size, meaning the USPTO did not assess patentability of a "mesh" size limitation. It would be improper for the Court to now interpret the claims as if they implicitly included such a limitation.

Plaintiff cannot recapture through claim construction what it failed to claim in the first place. The Federal Circuit's precedent is clear -- courts cannot add unwritten limitations to save a patent, even if the patentee later wishes it had claimed them. *See e.g., Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("courts may **not** redraft claims, whether to make them operable or to **sustain their validity**") (emphasis added). Here, "mesh" broadly covers all mesh not just mesh of a

14

particular fineness. The Court should follow Federal Circuit precedent and decline to rewrite the claim term "mesh" to mean only mesh that performs a certain function just because Plaintiff now finds that advantageous. The proper course is to apply the claims as written.

### 5.  Plaintiff Now Attempts to Claim a Result Not an Apparatus

Patent law draws a line between claiming an apparatus and claiming a result. If Plaintiff wanted to claim the function of blocking insects, it needed to explicitly add claim language with structural limitations which achieve that result (e.g. a mesh with apertures below a certain size). It chose not to do so. Courts consistently refuse to interpret claims as implicitly containing a result where the patentee did not include the corresponding structural limitation. *See e.g. Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) (claims must be interpreted in light of what they actually say, not the results they intend to achieve). Plaintiff's construction essentially asks to convert a general term ("mesh") into a means-plus-function style limitation ("means for preventing insect intrusion") without invoking 35 U.S.C. § 112(f) or using any such claim language. This is flatly prohibited.

### 6. Plaintiff's Proposed Construction Aims to Avoid Prior Art[9]

Ironically, Plaintiff's motivation for contorting "mesh" into "mesh sized to block harmful insects" is transparent as mesh. The unqualified term "mesh" as written renders the asserted claims vulnerable to prior art that Plaintiff now wishes to avoid.

---

[9] Hurst Citrus will thoroughly brief these prior art refences and why they invalidate Plaintiff's Patents on summary judgment.

15

In particular, two prior art references loom large – Morgan (U.S. Pat. No. 6,088,953) and Japanese Utility Model JP 3131895U (the "Prior Art References"). These Prior Art References both disclose protective mesh covers for plants. Like Plaintiff's Patents, the Prior Art References do not claim the insect-blocking function, which explains why Plaintiff now asks the Court to construe such a function into the term "mesh".

Plaintiff now urges the Court to construe "mesh" to sidestep the Prior Art References. This litigation-driven approach is precisely why courts are cautious not to let claim construction be distorted by *ex post facto* validity concerns. If a claim term is genuinely ambiguous an interpretation that preserves validity is preferred. Critically, however, the Federal Circuit has made clear that this approach cannot be used to impart limitations to a claim that are not present in the claim itself. *Hill-Rom Co. v. Stryker Corp.*, 755 F.3d 1367, 1373-1374 (Fed. Cir. 2014).

Here, "mesh" is not ambiguous. The asserted claims do not limit "mesh" as to size or function. Therefore "mesh" means any size mesh without regard to its function. Plaintiff does not propose choosing between two plausible dictionary meanings. Rather, it wants the Court to graft a size and functional limitation into "mesh" that fundamentally changes the term's scope. Doing so is not claim interpretation – it is claim *alteration*.

The Federal Circuit emphatically rejects attempts to redefine claims to escape prior art. In *Liebel-Flarsheim Co.* for example, the patentee disclosed a particular feature (a pressure jacket) in the specification but left it out of certain claims, which omission

16

broadened them. Later, the patentee was challenged with invalidating prior art that lacked a pressure jacket. To avoid the prior art, the patentee argued the claims should be read as if the jacket were required. The Federal Circuit not only refused to do so, it ultimately found the broad claims invalid, noting that the patentee must bear the cost of its broad claiming strategy. 358 F.3d at 911-912.

The lesson of *Liebel-Flarsheim Co.* applies here. Plaintiff cannot now assert that "mesh" means only a fine mesh that blocks harmful insects to dodge prior art claiming simply "mesh". If the claims as written encompass prior art tree bags, the remedy is not to contort the claim term "mesh", but to acknowledge the asserted claims' lack of novelty (or, as Hurst Citrus contends, to find those claims invalid as anticipated or obvious). Claim construction should determine what the patentee actually claimed, not what they wish in retrospect they had claimed.

Allowing Plaintiff's construction would set a dangerous precedent. Permitting the narrowing of broad claims via claim construction to avoid invalidity, when new limitation was never examined by the USPTO, would undermine both the public notice function of patent claims and the integrity of the examination process. The U.S. Supreme Court long ago directed that a patent claim is not a "nose of wax" to be shaped one way to secure the patent and another way to fend off challenges:

> Some persons seem to suppose that a claim in a patent is like a nose of wax, which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express. The context may undoubtedly be resorted to, and often is resorted to, for the purpose

17

of better understanding the meaning of the claim, but not for the purpose of changing it and making it different from what it is. The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is, and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.

*White v. Dunbar,* 119 U.S. 47, 51-52 (1886); see also *Sterner Lighting, Inc. v. Allied Elect. Supply* 431 F.2d 539, 544 (5th Cir. 1970) ("[a] patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement."). Plaintiff's effort to reshape "mesh" into an insect blocking mesh is a prohibited nose-twisting tactic and should be rejected.

## IV.    CONCLUSION

The Court's role in construing the sole remaining claim term "mesh" is to interpret what was actually claimed, not what Plaintiff now wishes it had claimed. Hurst Citrus' proposed construction of "mesh" to mean "a net-like material which provides water permeability and light transmissivity" neither expands nor limits what Plaintiff's Patents claim. It simply clarifies what "mesh" means. The Court should adopt Hurst Citrus' construction of "mesh".

Plaintiff's proposed construction violates a bevy of claim construction principles. Plaintiff's definition of "mesh" improperly seeks to: (a) import optional size and functional limitations from the specification; (b) convert its asserted apparatus claims into "means plus function" claims; (c) insert unexamined claim limitations; and

(d) use claim construction to avoid invalidating prior art. The Court should resist Plaintiff's invitation to error and reject Plaintiff's proposed recasting of its claims.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 2, 2025, I filed a true and correct copy of the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Ryan T. Santurri (rsanturri@allendyer.com), ALLEN, DYER, DOPPELT + GILCHRIST, P.A., 255 South Orange Avenue, Suite 1401, Orlando, Florida 32801.

/s/ *Richard E. Fee*
Richard E. Fee
Florida Bar No. 813680
Kathleen M. Wade
Florida Bar No. 127965
FEE & JEFFRIES, P.A.
1227 N. Franklin Street
Tampa, Florida 33602
(813) 229-8008
(813) 229-0046 (Facsimile)
rfee@feejeffries.com
kwade@feejeffries.com
bszabo@feejeffries.com
valeshire@feejeffries.com

*Lead Trial Counsel for Defendant, Mike Hurst Citrus Service Incorporated*

19