UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TREE DEFENDER, LLC,

       Plaintiff,

v.                               Case No. 8:24-cv-2520-VMC-NHA

MIKE HURST CITRUS SERVICE, INC.,

       Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Mike Hurst Citrus Service, Inc.'s ("Hurst Citrus") Motion for Reconsideration of Claim Construction Order (Doc. # 52), filed on February 25, 2026. Plaintiff Tree Defender, LLC responded on March 11, 2026. (Doc. # 53). For the reasons stated below, the Motion is denied.

## I.    **Legal Standard**

"Federal Rules of Civil Procedure 59(e) and 60 govern motions for reconsideration." <u>Beach Terrace Condo. Ass'n, Inc. v. Goldring Invs.</u>, No. 8:15-cv-1117-VMC-TBM, 2015 WL 4548721, at *1 (M.D. Fla. July 28, 2015). "The time when the party files the motion determines whether the motion will be evaluated under Rule 59(e) or Rule 60." <u>Id.</u> "A Rule 59(e) motion must be filed within 28 days after the entry of the

1

judgment." Id. "Motions filed after the 28-day period will be decided under Federal Rule of Civil Procedure 60(b)." Id.

Here, the Motion was filed within 28 days of the entry of the Claim Construction Order, so Rule 59 applies. "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (citation omitted). Granting relief under Rule 59(e) is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." United States v. DeRochemont, No. 8:10-cr-287-SCB-MAP, 2012 WL 13510, at *2 (M.D. Fla. Jan. 4, 2012) (citation omitted). Furthermore, "a Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Vill. of Wellington, 408 F.3d 757, 763 (11th Cir. 2005).

## II.  **Analysis**

Tree Defender initiated this action against Hurst Citrus, alleging that the individual plant covers ("IPCs") sold by Hurst Citrus infringe upon two patents possessed by Tree Defender: U.S. Patent Nos. 11,730,092 ("the '092 Patent") and 12,058,965 ("the '965 Patent"). (Doc. # 1, 32).

2

Central to this patent infringement action is the construction of the claim term "mesh" in the '092 and '965 Patents. Following the parties' briefing (Doc. ## 46, 47, 48) and a claim construction hearing (Doc. # 49), the Court entered its Claim Construction Order on February 11, 2026. (Doc. # 51). As the Court noted,

> [T]he parties both agree that the construction of "mesh" in the '092 and '965 Patents must refer to a material that provides "water permeability and light transmissivity." Accordingly, the sole dispute for the Court to decide is whether the claim term "mesh" must refer to a material that also prevents intrusion by insects. Tree Defender seeks a construction of "mesh" that requires preventing intrusion by insects, whereas Hurst Citrus seeks a construction of "mesh" without reference to preventing intrusion by insects.

(Id. at 6-7) (citations omitted). Ultimately, the Court ordered that the claim term "mesh" is to be construed as "[a] net-like material having a mesh size which provides water permeability and light transmissivity, but prevents intrusion by small insects such as psyllids." (Id. at 6).

That construction rested on two independent grounds. First, the '092 and '965 Patents' specifications impliedly define "mesh" as a material that prevents intrusion by insects. (Id. at 8-14). Second, the prosecution history of related U.S. Patent Application No. 15/359,111 ("the '111

3

Application") provided a clear and unequivocal definition of "mesh" as a material that prevents intrusion by insects, giving rise to prosecution disclaimer. (Id. at 14-21).

In the Motion, Hurst Citrus seeks reconsideration of the Court's Order "to the extent that it construes 'mesh' to require that it 'prevent[] intrusion by small insects such as psyllids.'" (Doc. # 52 at 1). According to Hurst Citrus:

> Reconsideration of the Court's Order is warranted to correct clear error and prevent manifest injustice. The error and resulting injustice arise here from the misapplication of the doctrine of prosecution history estoppel. . . .
>
> The Court's clearly erroneous finding of prosecution history disclaimer rests on a single sentence in the Applicant's Reply Brief to the Patent Trial and Appeal Board ("PTAB"). Importantly, the sentence relied upon by the Court was not the Applicant's own statement. The sentence was, in fact, a quote of a quote. The Applicant's Reply Brief quoted the Examiner's quotation of a part of the '111 Patent's specification. Further, the quote was not used to distinguish the Hart prior art reference based on insect intrusion.
>
> The appeal to which Applicant's Reply Brief pertained did not hinge on insect intrusion. It turned on whether the water resistant "canvas, cloth or paper" hood of the Hart prior art reference satisfied a "mesh" limitation requiring open texture, water permeability, and light transmissivity. The PTAB reversed on those permeability and transmissivity grounds only and did even not mention insects.

4

> Prosecution history disclaimer applies only when the applicant clearly and unmistakably surrenders claim scope. No such disclaimer exists here. Accordingly, the Court should reconsider its Order and construe "mesh" as "a net-like material which provides water permeability and light transmissivity," without an insect intrusion limitation.

(Id. at 1-2) (citations omitted).

As an initial matter, Hurst Citrus's Motion is inappropriate. Again, "a Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc., 408 F.3d at 763. "This prohibition includes new arguments that were 'previously available, but not pressed.'" Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009) (citation omitted). Additionally, a "motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision." Z.K. Marine Inc. v. M/V Archigetis, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992). That is, Hurst Citrus "cannot rely on cases that do not represent an intervening change in controlling law and that could have been cited in" the claim construction briefing. Atl. Specialty Ins. Co. v. Mr. Charlie

5

Adventures, LLC, No. CIV.A. 13-458-CG-N, 2015 WL 2095650, at *4 (S.D. Ala. May 5, 2015).

All the authorities cited by Hurst Citrus in the Motion were available at the time the Court entered its Order (many were cited in the briefing and the Court's Order). All of Hurst Citrus's arguments about prosecution disclaimer in the Motion could have been raised prior to entry of that Order. Indeed, the Motion attempts to relitigate the issue of prosecution disclaimer that was extensively discussed in the Court's Order. The Motion is due to be denied on this basis alone. Nonetheless, even considering Hurst Citrus's arguments and authorities, the Motion fails on the merits.

## A.    **The Specification**

As reflected in the Motion, Hurst Citrus only seeks reconsideration based on its argument that the Court erred in finding prosecution disclaimer. Accordingly, the Motion is due to be denied because Hurst Citrus fails to address the first independent ground for the Court's construction, i.e., that the '092 and '965 Patents' specifications impliedly define "mesh" as a material that prevents intrusion by insects. (Doc. # 51 at 8-14).

As the Court noted in the Claim Construction Order (Id. at 4-5, 12), "[t]he specification acts as a dictionary . . .

when it defines terms by implication," and the specification usually "is dispositive; it is the single best guide to the meaning of a disputed term." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Intrinsic evidence, such as the specification, "is the most significant source of the legally operative meaning of disputed claim language." Id. In the Claim Construction Order, the Court found that the '092 and '965 Patents' specifications characterize the claimed inventions as "insect repelling" and, read as a whole, lead to the conclusion that the claimed inventions must prevent insect intrusion. (Doc. # 51 at 13-14).

Accordingly, even if Hurst Citrus were correct that the Court erred as to prosecution disclaimer, the Motion would still be denied because the '092 and '965 Patents' specifications' implied definition independently supports the Court's construction of "mesh." Hurst Citrus has presented no argument challenging the implied definition of "mesh" in the '092 and '965 Patents' specifications.

**B.    Prosecution Disclaimer**

In any event, the Court did not err in finding prosecution disclaimer. Indeed, the prosecution history only confirms the implied definition of "mesh."

Beyond the implied definition of "mesh," the '092 and '965 Patents' specifications also each contained an express definition of the claim term. (Doc. ## 46-1 at 15, 46-2 at 15) ("a mesh material, which provides water permeability and light transmissivity, but prevents intrusion by small insects such as psyllids."). However, the Court did not rely upon this express definition in the specifications (Doc. # 51 at 13) because the specifications both contained disclaimers which explicitly state that the '092 and '965 Patents' claims "should not be construed as limited to only the embodiments described here" and are "not limited to the only the examples described here." (Doc. ## 46-1 at 14-15, 46-2 at 15-16). Thus, the Court found that the purported express definition of "mesh" in the specifications was negated by the explicit disclaimers in the specifications, but that the implied definition of "mesh" was not negated by the disclaimers. (Doc. # 51 at 13-14). Hurst Citrus does not challenge this finding.

After reviewing the specifications, the Court turned to a review of the prosecution history of the related '111 Application. (Doc. # 51 at 14). The Court found that the '111 Application's applicant ("Applicant") had asserted an explicit definition of "mesh." (Id. at 19). In fact, that definition was entirely aligned with the purported express

8

definition contained in the '092 and '965 Patents' specifications.

During the prosecution of the '111 Application, the USPTO examiner contended that the '111 Application "does not define what [Applicant] considers to be a mesh surface." (Doc. # 46-3 at 3). Using a dictionary definition, the examiner interpreted the claim term "mesh" as "(1) any knit, woven or knotted fabric of open texture and (2) an interwoven or intertwined structure." (Doc. ## 46-3 at 3-4; 46-4 at 5). Under this definition, the examiner concluded that a prior art pertaining to cloth (the "Hart Reference") had already disclosed the '111 Application's claim, reasoning that "cloth is understood as a material comprising an interlaced structure i.e., mesh." (Doc. # 46-4 at 5). Accordingly, the USPTO examiner rejected the '111 Application's claims as unpatentable. (Id.).

The Applicant appealed the examiner's decision to the Patent Trial and Appeal Board ("PTAB"). (Id. at 1). In its "Reply" brief before the PTAB, the Applicant stated the following:

> As correctly quoted by the Examiner yet somehow wrongly disputed in the same paragraph, the Specification defines a mesh as 'provid[ing] water permeability art, light transmissivity, but

> prevent[ing] intrusion by small insects such as psyllids. The mesh size may for example, 50 mesh or 50 by 25 threads per square inch. Such a mesh size will be sufficient to prevent intrusion by psyllids, aphids, white flys, mealy bugs, leaf miners, thrips, grasshoppers, ants, and orange dogs.'

(Doc. # 46-3 at 4) (alterations in original).

Thus, the Reply brief shows that the Applicant asserted to the PTAB the same express definition of "mesh" that is contained in the specifications, but without any disclaimer. The Applicant did so to rebut the examiner's argument that the '111 Application's specification did not provide a definition of mesh. Accordingly, this Court found that the '111 Applicant had put forth a clear and unequivocal definition of "mesh" that includes preventing intrusion by insects, and under the doctrine of prosecution disclaimer, that definition attaches to the '092 and '965 Patents.

In its Motion, Hurst Citrus levies various arguments to avoid this conclusion. None are persuasive.

### i.   *Distinguishing Prior Art*

First, Hurst Citrus argues that the Applicant's definition of "mesh" was "not used to distinguish the [Hart Reference] based on insect intrusion" (Doc. # 52 at 2) (emphasis removed), and that "[u]nder Federal Circuit law,

prosecution history disclaimer requires that the applicant clearly invoke the limiting feature as a basis to overcome prior art or otherwise surrender claim scope." (Id. at 5-6) (emphasis removed) (citing Spectrum Int'l, Inc. v. Sterilite Corp., 164 F.3d 1372, 1378 (Fed. Cir. 1998); Seachange Int'l, Inc. v. C-COR, Inc., 413 F.3d 1361 (Fed. Cir. 2005). The Court observes that Hurst Citrus provides no parenthetical explanation or quoted language as to why these cases support its argument. Indeed, neither case supplies the support that Hurst Citrus seeks.

In Spectrum Int'l, Inc., the Federal Circuit stated that "explicit statements made by a patent applicant during prosecution to distinguish a claimed invention over prior art *may* serve to narrow the scope of a claim." 164 F.3d at 1378 (emphasis added) (citations omitted). In Seachange Int'l, Inc., the Federal Circuit stated that "[w]here an applicant argues that a claim possesses a feature that the prior art does not possess in order to overcome a prior art rejection, the argument *may* serve to narrow the scope of otherwise broad claim language." 413 F.3d at 1372-73 (emphasis added) (citations omitted).

Both cases reflect that invoking a limiting feature to distinguish prior art is *one potential method* of effectuating

11

prosecution disclaimer, but not the only method. That is because the underlying rationale of the doctrine of prosecution disclaimer is that an applicant provides notice to the public as to what the applicant considers the claims to cover, and distinguishing prior arts is one way to do that. See Spectrum Int'l, Inc., 164 F.3d at 1378-79 (discussing notice and the public's reliance on an applicant's statements as the justification for prosecution disclaimer) (citations omitted); see also Seachange Int'l, Inc., 413 F.3d at 1372 ("The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct . . . we consider the prosecution history to determine 'whether the patentee disclaimed or disavowed subject matter, narrowing the scope of the claim terms.'" (citations omitted)). Neither case stands for Hurst Citrus's proposition that an applicant's limiting statements about claim scope are only relevant if the limitation is at issue in the prior art.

Indeed, none of the authorities cited by Hurst Citrus disagree with the Federal Circuit holding that "*any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant*, for the role

12

of claim construction is to capture the scope of the actual invention that is disclosed, described, and patented." Iridescent Networks, Inc. v. AT&T Mobility, LLC, 933 F.3d 1345, 1352-52 (Fed. Cir. 2019) (emphasis added) (cleaned up) (citing Fenner Invs., Ltd. v. Cellco P'ship, 778 F.3d 1320, 1323 (Fed. Cir. 2015); and Aptalis Pharmatech, Inc. v. Apotex Inc., 718 F. App'x 965, 971 (Fed. Cir. 2018)). The very reason that courts look to the prosecution history is because it "can often inform the meaning of the claim language by demonstrating *how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution*, making the claim scope narrower than it would otherwise be." Id. at 1353 (emphasis added) (quoting Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc)).

Here, the Applicant's Reply brief to the PTAB demonstrates that the Applicant understood "mesh" to refer to a material that provides water permeability and light transmissivity, but prevents intrusion of small insects such as psyllids. That the insect-blocking feature was not framed as a distinction from the Hart Reference does not detract from the significance of the Applicant's express statement about the scope of the claim term.

13

### ii.   Unmistakable Surrender

Next, Hurst Citrus argues that the Applicant's definition of "mesh" in the Reply brief "cannot be treated as an unmistakable surrender." (Doc. # 52 at 6). According to Hurst Citrus, the Court's finding of prosecution disclaimer "rests on a single sentence in the Applicant's Reply Brief" that "was not the Applicant's own statement" but a "quote of a quote." (Id. at 2) (emphasis removed) ("The Applicant's Reply Brief quoted the Examiner's quotation of a part of the '111 Patent's specification.").

As demonstrated by the very cases cited by Hurst Citrus, the relevant inquiry is not whether the Applicant quoted the examiner but whether the Applicant adopted the statement as its own position during prosecution. See, e.g., Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp., 540 F. Supp. 2d 1233 (M.D. Fla. 2008) ("[I]t is the applicant and not the examiner who must 'give up or disclaim subject matter' that would otherwise be included within the scope of the claim" and "[t]he statement of an examiner alone will not necessarily limit a claim." (citations omitted)); see also Salazar v. Procter & Gamble Co., 414 F.3d 1342, 1346-47 (Fed. Cir. 2005) (requiring that disavowal of claim scope is based on the applicant's arguments during prosecution); see also Omega

14

Eng'g, Inc, v. Raytek Corp., 334 F.3d 1314, 1325 (Fed. Cir. 2003) ("[P]rosecution history . . . cannot be used to limit the scope of a claim *unless the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter.*" (emphasis added) (citation omitted)).

Here, in quoting the examiner's quotation of the '111 Application's specification, the Applicant expressly took the position that "the Specification defines a mesh" in a manner that includes prevention of insect intrusion. (Doc. # 46-3 at 4). That the Applicant supplied its definition of "mesh" in a "single sentence," or that the PTAB's decision makes no reference to insect intrusion, is not material. The Applicant's definition was an affirmative representation to the PTAB regarding the Applicant's understanding of the meaning of a claim term central to patentability. Indeed, the very reason the Applicant supplied the definition was to obtain its patent by rebutting the examiner's position that the '111 Application does not define "mesh." The Applicant's articulation of the meaning of "mesh" was made while contesting the examiner's construction and formed part of the Applicant's overall argument that the examiner's interpretation was incorrect. This is exactly the scenario in

15

which the prosecution history limits claim scope. The Court declines to isolate portions of the Applicant's express representation or treat them as non-limiting.

### iii. Alleged Ambiguity

Finally, Hurst Citrus contends that "the prosecution record is 'amenable to multiple reasonable interpretations,' which requires rejection of prosecution history disclaimer as a matter of law." (Doc. # 52 at 7). As the Court has noted, the doctrine of prosecution disclaimer does not apply where the alleged disavowal of claim scope is ambiguous or amenable to multiple reasonable interpretations. (Doc. # 51 at 20) (citing Omega Eng'g, Inc, 334 F.3d at 1324). Nonetheless, Hurst Citrus's argument fails because the Applicant's definition of "mesh" in the Reply is not ambiguous. (Id.).

First, Hurst Citrus argues that the '092 and '965 Patents' specifications use "explicitly permissive language" and "contain express statements that the disclosure describes example aspects and embodiments and should not be construed as limited to only the embodiments described." (Doc. # 52 at 7). Indeed, as the Court has noted, the specifications' purported express definition of "mesh" is negated by the "example aspects and embodiments" disclaimer contained therein. (Doc. # 51 at 11-14). But "[c]laims may not be

16

construed one way in order to obtain their allowance and in a different way against accused infringers." Spectrum Int'l, Inc., 164 F.3d at 1379. Thus, after the Court's finding of prosecution disclaimer, the "example aspects and embodiments" disclaimer in the specifications would not necessarily apply to the construction of "mesh," because the Applicant had previously construed "mesh" in a clear and unequivocal definition. See Omega Eng'g, Inc., 334 F.3d at 1323 (prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution."). As the Applicant quoted to the PTAB the very definition contained in the specifications, the Applicant in effect took the definition of "mesh" outside the operation of the "example aspects and embodiments" disclaimer, thereby disavowing any construction of "mesh" that would allow insects to intrude.

Second, Hurst Citrus merely states that "[e]xtracting a single sentence from a PTAB Reply Brief that quotes the Examiner's quotation, and converting it into a categorical insect-blocking limitation is the kind of ambiguity-driven narrowing that the doctrine forbids." (Doc. # 52 at 7). Without parenthetical explanation or quotation, Hurst Citrus cites to various cases for the unremarkable proposition that

17

ambiguous disavowals do not affect prosecution disclaimer. See (Id.) (citing Omega Eng'g, Inc., 334 F.3d at 1324; Avid Tech., Inc. v. Harmonic, Inc., 812 F.3d 1040, 1045 (Fed. Cir. 2016); 3M Innovative Props. Co. v. Tredegar Corp., 725 F.3d 1315 (Fed. Cir. 2013); Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1374-75 (Fed. Cir. 2008); and Glob. Tech Led, LLC v. HiLumz Int'l Corp., No. 2:15-cv-553-JES-CM, 2017 WL 2241053 (M.D. Fla. May 23, 2017)).

But Hurst Citrus fails to explain how anything in the Reply brief could indicate that "mesh" might allow insects to intrude. Indeed, to do so would not be possible. The Reply brief clearly and expressly stated the Applicant's position that "the Specification defines a mesh as providing water permeability art, light transmissivity, but preventing intrusion by small insects such as psyllids." (Doc. # 46-3 at 4) (cleaned up). Nothing in that definition, or any other statement by the Applicant in the prosecution history, could reasonably indicate that "mesh" could allow insects to intrude. The only reasonable interpretation of the Applicant's definition is that "mesh" must prevent insect intrusion. That interpretation wholly aligns with and confirms the implied definition in the '092 and '965 Patents' specifications.

18

The other authorities cited by Hurst Citrus do not alter this conclusion. In AAMP of Florida, Inc v. Auto. Data Sols., Inc., No. 8:13-cv-2019-MSS-TGW, 2015 WL 6672257 (M.D. Fla. July 22, 2015), the court rejected prosecution disclaimer because the at-issue language was "nothing more than a description of a preferred embodiment." Id. at *7. In Wi-LAN USA, Inc. v. Telefonaktiebolaget TM Ericsson, No. 12-CV-23569, 2015 WL 6673742 (S.D. Fla. Jan. 13, 2015), the court rejected prosecution disclaimer because the at-issue construction was "simply incomprehensible." Id. at *5. Here, in contrast, the Applicant's definition of "mesh" in the Reply brief clearly and unmistakably requires that it prevent insect intrusion. Thus, prosecution disclaimer applies.

Hurst Citrus fails to establish any basis for reconsideration.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Hurst Citrus's Motion for Reconsideration of Claim Construction Order (Doc. # 52) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 3rd day of April, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

19